| | |
|---|---|
| Jessica Marfoe<br>Plaintiff<br><br>v.<br><br>BMO HARRIS BANK N.A.<br>and<br>BMO HARRIS INVESTMENT<br>COMPANY LLC<br>Defendant | United States District Court<br>Northern District of Illinois<br><br>**RECEIVED**<br><br>NOV 01 2023<br><br>THOMAS G. BRUTON<br>CLERK, U.S. DISTRICT COURT<br><br>Case 1:23-cv-15541<br>Judge Steven C. Seeger<br>Magistrate Judge Jeffrey Cole<br>Cat 2<br>Random Assignment |

## COMPLAINT

Jessica Marfoe (Plaintiff) hereby makes the following allegation against BMO HARRIS BANK N.A. & BMO HARRIS INVESTMENT COMPANY LLC (Defendant) and states as follows:

### INTRODUCTION

1   This is an action to recover damages resulting from Defendants Breach of Contract/Fiduciary Duty.

### JURISDICTION

2   This court has jurisdiction over this dispute because this complaint is in regards to a federal question, therefore jurisdiction is proper under 28 USC 1331.

### PARTIES

3   The Plaintiff is an adult citizen resident of Cook County and resides at 15232 Ridgeland Avenue in Oak Forest, Illinois 60452.

4   The Defendant is a corporation doing business in Cook County with a corporate address of 111 West Monroe Street in Chicago, Illinois 60603.

## FACTS

5      On August 23, 2019 the Plaintiff purchased a 2013 Honda CRV from Community Imports that was financed by the Defendant. The purchase price was $23,174.96 with a $5,000 cash down payment.

6      Pursuant to 15 USC 1605(a) of the Truth in Lending Act the finance charge connected to any consumer credit transaction is the sum of all charges, but does not include charges of a type payable in a cash transaction. This tells us that a cash down payment is not necessary in a consumer credit transaction that is connected with a finance charge.

7      Federal Reserve Act, Section 16, Part 1, tells us about the issuance of Federal Reserve notes and that these said notes shall be obligations of the United States as well as that these notes shall be receivable by all national banks for all taxes, customs and public dues. 18 USC 8 also tells us what the obligations and other security of the United States are, and these obligations include Federal Reserve notes, coupons and bills.

8      Federal Reserve Act, Section 16, Part 2, tells us that the application is the collateral security and that it will be offered in the form of notes, drafts, bills of exchange, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by the United States or any agency thereof. Furthermore, this section also states that in no event shall the collateral security be less than the amount of Federal Reserve notes applied for.

9      The facts of 7 and 8 above tells us that the application that the Plaintiff filled out on August 23, 2019 was the collateral security and that the Defendant took that application to a Federal Reserve bank, receiving the total amount of Federal Reserve notes that were applied for, meaning that the vehicle was paid for in full on August 23, 2019. When the Plaintiff signed the application that included name and social security number, the Plaintiff gave authorization to the Defendant to access the Plaintiffs estate for the amount applied for on the application.

10      From the time of purchase the Plaintiff paid the amount of $252.43 each month by the due date, for a total of 39 months, equalling $9,844.77. Pursuant to 15 USC 1615 of the Truth in Lending Act if a consumer pays cash in any amount over $1 in a consumer credit transaction it will all be returned to the consumer.

11  Beginning on March 30, 2023 the Plaintiff sent via certified mail multiple indorsed negotiable instruments accompanied by letters of instructions to the Defendants Chief Executive Officer to use the negotiable instruments to set off the Plaintiffs account.

12  For each letter with negotiable instrument sent, the Plaintiff received a letter from the Loan Servicing Department of the Defendant. These letters were dated April 10, 2023, April 25, 2023 and May 3, 2003, all refusing to accept the negotiable instruments sent.

13  None of the negotiable instruments were returned to the Plaintiff with any of these letters of refusal.

14  On June 5, 2023 the Plaintiff sent via certified mail a conditional acceptance for breach of trust and denial of payment through a negotiable instrument to the Defendants Chief Executive Officer and two principals, as well as to the U.S. Attorney General and the Attorney General of Illinois as Witnesses.

15  On June 9, 2023 a response letter was sent to the Plaintiff ignoring the Conditional Acceptance. The Defendant was given 10 days to respond and rebut the Conditional Acceptance item by item and that it stated that failure to do so would hold the Defendant in agreement to the terms of the Conditional Acceptance, which included bringing the account to zero.

16  On July 18, 2023 the Plaintiff mailed via certified mail to the Defendants Chief Executive Officer and to the two principals named in the Conditional Acceptance, a Notice of Default, Adequate Remedy and Fee Schedule. The Plaintiff also filed this document with the Secretary of State. This was done due to the Defendant not bringing the account to zero.

17  Plaintiff received a letter from the Defendants Loan Servicing Department dated July 24, 2023 refusing to acknowledge the Notice of Default and continuing to state that the account with the Defendant was not paid.

18  The Defendant has continued to send statements to the Plaintiff each month, call and leave messages multiple times regarding the account not being paid and email the Plaintiff multiple times regarding the account not being paid.

19  The Defendant has reported the Plaintiff to the credit agencies, causing the Plaintiffs credit score to be negatively impacted.

20  Plaintiff received a letter dated September 20, 2023 from the Defendant indicating that there is an account balance and if there is no response to their claim by October 21, 2023 they are threatening to take legal action against Plaintiff.

21  Beginning on September 28, 2023 Plaintiff began a private administrative process to the Defendants Chief Financial Officer. The first letter included a Notice of Assessment with an indorsed Bill of Exchange, letter of instructions and a copy of the Plaintiffs Durable Power of Attorney sent via certified mail to the Defendants corporate offices at 111 West Monroe Street, Chicago, Illinois 60603. Confirmation of delivery on October 5, 2023. The Bill of Exchange sent was marked Accepted, made Payable to the Bearer and On Demand and restrictively indorsed as per the Bills of Exchange Act, Part 2.

22  On October 5, 2023 a second letter, Opportunity to Cure, with a second indorsed Bill of Exchange, marked Accepted, made Payable to the Bearer and On Demand and restrictively indorsed as per the Bills of Exchange Act, Part 2, was mailed via certified mail to the Defendants Chief Financial Officer at the Defendants corporate offices at 111 West Monroe Street, Chicago, Illinois 60603. Confirmation of delivery on October 12, 2023.

23  On October 13, 2023 a third letter, Notice of Default, with a third indorsed Bill of Exchange, marked Accepted, made Payable to the Bearer and On Demand, and restrictively indorsed as per the Bills of Exchange Act, Part 2, was mailed via certified mail to the Defendants Chief Financial Officer, at the Defendants corporate offices at 111 West Monroe Street, Chicago, Illinois 60603. Confirmation of delivery on October 23, 2023.

24  The Plaintiff has not received a response to any of these three letters.

25  On October 13, 2023 Plaintiff sent a response to the letter dated September 20, 2023, objecting to the claim that there is still a balance on this account. This letter was sent to the Defendant via certified mail to the Defendants Recovery Department at P.O. Box 6150, Carol Stream, Illinois 60197-6150. This is where the letter dated September 20, 2023 was sent from. Confirmation of delivery on October 18, 2023.

26  The Plaintiff has fully completed performance on this account, fulfilling her duty as the agent for the estate and acting in good faith.

## SUBSTANTIVE LAW

27  The Federal Reserve Act, Section 16, Parts 1 tells us that the issuance of Federal Reserve Notes is authorized and that the said notes are obligations of the United States. Part 1 also tells us that these said notes are to be receivable by all national banks for all taxes, customs and public dues, and that these issuances are redeemable at the Treasury Department or at any Federal Reserve Bank.

28  The Federal Reserve Act, Section 16, Part 2 tells us that the application is a collateral security and that the bank received the amount of Federal Reserve Notes that were applied for on the application. Part 2 goes on to tell us that in no event shall the collateral security be less than that amount of Federal Reserve notes applied for and that the collateral security offered shall be notes, drafts, bills of exchange, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by the United States or any agency thereof.

29  The Bills of Exchange Act outlines how to properly indorse a bill in order to accept the credits being given and transfer those credits back to the account for set off. Each bill sent to a consumer shows a positive principal balance that is to be accepted, made payable to the bearer, restrictively indorsed and transferred to the principal account for set off.

30  The Cestui Que Vie Act is an act for remedy for the inconveniences of a person being held out of their estate. The Act tells us that if a person does not come forward within 7 years to claim their estate, that a claim can be made to take over the estate from the person by the organizations that are leasing these estates from the person. Part 4 of the Act tells us that the person whose estate was taken over by an organization due to their not claiming it within 7 years can recover their estate through any Action. The person who was held out of their estate is also to receive all profits and interest made while they were absent.

31  18 USC 8 tells us that all bills, coupons, Federal Reserve Notes, etc. are the obligation of the United States.

32  12 USC 1431 states that banks have the powers to borrow, give security and to pay interest. This lets us know that banks are not the creditors in any consumer credit transaction, but instead that they are the borrowers.

33    15 USC 1605 of the Truth and Lending Act states that a consumer credit transaction is not to be accompanied with cash and that the finance charge is the sum of all charges in a consumer credit transaction.

34    15 USC 1615 of the Truth and Lending Act states that all unearned interest paid by a consumer is to be refunded to them by the corporation.

35    Federal Reserve Act, Section 29, Civil Penalty Charges tells us that if any member bank violates any regulation issued (Federal Reserve Act Section 16) they shall pay a civil penalty. There are three tiers in this section with the first tier based off the aforementioned violation. Tier 2 is based on the violation in Tier 1, plus additional violations including the member bank breaching fiduciary duty and showing a pattern of misconduct. The 3rd tier is based off the member bank knowingly committing a violation from the first tier or breaching any fiduciary duty.

## DEMAND FOR JUDGEMENT

36    Based on the misdeeds of the Defendant and their failure to respond in any way to the Plaintiffs three letters of instruction that were sent certified mail beginning with the first letter on September 28, 2023, the Plaintiff is requesting the amount of $5,385,000.00 in damages according the tier structure outlined in the Federal Reserve Act, Section 29, Civil Money Penalty.

## JURY TRIAL DEMANDED

Signature of the Plaintiff _Jessica Marfoe_     Date 11/1/2023
Printed name of Plaintiff _Jessica Marfoe_
Address _15232 Ridgeland Ave._
_Oak Forest, IL 60452_
Phone Number _708-275-6415_